# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
### NORTHERN DIVISION

**IVANA WILLIAMS**                                                    **PLAINTIFF**

**V**                                            **CAUSE NO. 3:24-cv-606-KHJ-MTP**

**MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY,**
**SEAN TINDELL, AND JOHN DOES 1-10**                          **DEFENDANT**


## PLAINTIFF'S MEMORANDUM IN RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

**COMES NOW** Plaintiff Ivana Williams ("Plaintiff"), by and through undersigned counsel, and files this Response in Opposition to the Motion to Dismiss ("Motion") [Doc. No. 27] filed by Defendant Mississippi Department of Public Safety ("MDPS") and Sean Tindell ("Tindell"), and in support thereof, states as follows:

## I. INTRODUCTION

Defendants seek to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff has failed to state plausible claims for relief under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, 42 U.S.C. § 1983, and state law. The Defendants' Motion is premised on a flawed interpretation of the law and a disregard for the well-pleaded facts in Plaintiff's Amended Complaint [Doc. No. 17]. Plaintiff has alleged a compelling case of systemic sex discrimination, harassment, and retaliation during her employment as a law enforcement officer with the Mississippi Department of Public Safety ("MDPS"), culminating in her wrongful termination. Her Amended Complaint details violations of Title VII and 42 U.S.C. § 1983, including deprivations of her Fourteenth Amendment rights to equal protection and due process. Defendants' Motion relies on mischaracterizations of Plaintiff's

allegations and misapplications of relevant legal standards. This Court should deny the Motion in its entirety and allow Plaintiff to proceed with discovery.

## II. FACTUAL BACKGROUND

Plaintiff, a dedicated former law enforcement officer with MDPS, was subjected to a pervasive pattern of sex discrimination, harassment, and retaliation that permeated her employment, ultimately leading to her unlawful termination. Her Amended Complaint paints a vivid picture of a workplace rife with gender bias, where she was denied opportunities for advancement, subjected to degrading treatment, and retaliated against for daring to challenge the status quo. The Amended Complaint supports these claims by setting forth the following:

a. Plaintiff began her employment with MDPS on March 6, 2018, and consistently met or exceeded the performance expectations of her male colleagues. (Am. Compl. ¶ 8).

b. Despite her exemplary performance, Plaintiff was repeatedly denied promotions to specialized units, including the Special Operations Group (SOG) and the motorcycle team, solely because of her sex. These coveted positions were instead bestowed upon less qualified male officers. (Am. Compl. ¶¶ 8, 13).

c. Plaintiff was subjected to egregious sexual harassment during Patrol School, including: Offensive sexual remarks from male instructors; Humiliating orders to perform degrading acts for the amusement of male trainees; Unwanted physical contact, such as buttocks patting, in full view of others. (Am. Compl. ¶ 11).

d. Plaintiff faced escalating harassment and a hostile work environment orchestrated by her superior officers. (Am. Compl. ¶ 14).

e. Plaintiff endured retaliatory transfers after complaining about the discriminatory treatment she faced. (Am. Compl. ¶¶ 8, 16).

f. Plaintiff's opportunities for professional advancement were systematically thwarted due to her sex. (Am. Compl. ¶ 13).

g. Plaintiff was denied admission to the SOG, while less-qualified male officers were readily admitted. (Am. Compl. ¶ 13).

h. Plaintiff was explicitly excluded from the motorcycle team, which was characterized as a "boy's club." (Am. Compl. ¶ 13).

i. Plaintiff was subjected to public humiliation at a SOG gathering, where she was bombarded with inappropriate comments and propositions. (Am. Compl. ¶ 14).

j. Defendant Tindell's involvement included an invitation to Plaintiff to a residence he co-owns, where participation in social gatherings was implicitly tied to professional advancement. (Am. Compl. ¶ 15).

k. In November 2023, Plaintiff was summoned by Tindell, subjected to an accusatory interrogation regarding derogatory statements, and had her phone unlawfully confiscated. (Am. Compl. ¶ 16).

l. Plaintiff was punitively transferred to a district over 100 miles from her home in late 2023, imposing an undue hardship on her as a single mother. Notably, male officers facing similar circumstances were not subjected to such disruptive transfers. (Am. Compl. ¶¶ 17).

m. Plaintiff courageously challenged her reassignment through a formal grievance, only to face further retaliation culminating in her termination on February 13, 2024, following a sham due process hearing. (Am. Compl. ¶¶ 19).

n. Male officers who engaged in far more egregious misconduct, including harassment and criminal activity, were treated with leniency, in stark contrast to the harsh treatment meted out to Plaintiff. (Am. Compl. ¶ 20).

o. Plaintiff was denied the basic procedural protections routinely afforded to male employees, including notice of adverse actions, an opportunity to respond, and fair and impartial hearings. (Am. Compl. ¶¶ 21, 40, 41).

p. MDPS has failed to implement policies and practices to prevent or address the rampant discrimination and harassment faced by female employees. (Am. Compl. ¶ 23)

q. Plaintiff timely filed a charge of discrimination with the EEOC, received a right-to-sue letter, and has satisfied all jurisdictional prerequisites to filing this action. (Am. Compl. ¶ 24).

Plaintiff's Amended Complaint asserts the following claims:

1. Count I: Violations of Title VII, alleging sex discrimination, a hostile work environment, and retaliation.

2. Count II: Violations of the Equal Protection Clause under 42 U.S.C. § 1983, alleging intentional sex-based discrimination by Defendants Tindell and John Does 1-10.

3. Count III: Violations of the Due Process Clause under 42 U.S.C. § 1983, challenging her termination and transfer without adequate notice or a meaningful opportunity to be heard.

4. Count IV: Breach of contract, based on her termination without cause or due process in violation of an implied employment contract.

5. Count V: Intentional interference with Plaintiff's employment contract by Defendants, motivated by discriminatory animus and bias.

Plaintiff seeks the following relief:

1. Actual damages.

2. Back pay, reinstatement, or front pay.

3. Compensatory damages for emotional distress, inconvenience, and other non-

pecuniary losses.

4. Attorney's fees and punitive damages under § 1983.

5. Any other relief the Court deems just and equitable.

The Amended Complaint provides a detailed factual basis for liability against MDPS and Sean Tindell under federal discrimination laws. It paints a picture of a pervasive pattern of gender-based discrimination, harassment, and retaliation that culminated in Plaintiff's wrongful termination. Specifically, the Amended Complaint alleges that Plaintiff, a qualified and high-performing law enforcement officer, was systematically denied opportunities for advancement and subjected to adverse treatment solely because of her sex. The Amended Complaint details how, during her employment, Plaintiff experienced explicit sexual harassment, including verbal and physical misconduct by male officers and instructors, and was forced to perform degrading acts for their amusement. Despite repeated applications, she was denied promotion to specialized units such as the SOG and the motorcycle team, where less-qualified male officers were routinely accepted.

The Amended Complaint further alleges that Tindell, acting under color of state law, participated in or failed to prevent discriminatory and retaliatory actions. This includes directing her transfer to a district over 100 miles away without justification, confiscating her phone during an improper interrogation, and failing to address the hostile work environment, and actually provided the hostile work environment. The Amended Complaint claims that Plaintiff was denied due process protections routinely afforded to male employees and terminated without legitimate cause after opposing discrimination. Together, these allegations establish a factual foundation for claims under Title VII and 42 U.S.C. § 1983, demonstrating a systemic failure by MDPS and intentional conduct by Tindell to violate Plaintiff's constitutional and statutory rights.

# III. ARGUMENT

## A. Standard of Review

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed if it fails to state a claim upon which relief can be granted. To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept all well-pleaded allegations as true and view them in the light most favorable to the non-moving party. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205-06 (5th Cir. 2007). Dismissal is appropriate only when the complaint fails to allege sufficient facts to support a claim that is plausible on its face. *Iqbal*, 556 U.S. at 678.

Plaintiff's Amended Complaint meets this standard. It provides detailed factual allegations supporting claims of sex discrimination, harassment, retaliation, and violations of due process under Title VII and 42 U.S.C. § 1983. Defendants' Motion to Dismiss should be denied.

## B. Tindell is Not Entitled to Qualified Immunity and is liable

Defendants argue that Defendant Sean Tindell, Commissioner of MDPS, is entitled to qualified immunity on Plaintiff's § 1983 claims. This argument is flawed and ignores the well-pleaded facts of the Second Amended Complaint and established legal precedent.

Tindell is not entitled to qualified immunity because he did not properly raise the defense from suit and because he deprived Plaintiff of her constitutional rights by participating in or failing to prevent discriminatory and retaliatory actions and by depriving her of substantive and procedural due process. "To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must plead 'two-and only two-allegations . . . . First, the plaintiff must allege that some person has deprived him of a federal right. Second, he must allege that the person who has deprived him of that right

acted under color of state or territorial law.'" *Arnold v. Williams*, 979 F.3d 262, 266 (5th Cir. 2020) (quoting *Gomez v. Toledo*, 446 U.S. 635, 640, 100 S. Ct. 1920, 64 L. Ed. 2d 572 (1980)). "Section 1983 claims implicating qualified immunity are subject to the same Rule 8 pleading standard set forth in *Twombly* and *Iqbal* as all other claims; an assertion of qualified immunity in a defendant's answer or motion to dismiss does not subject the complaint to a heightened pleading standard." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020) (citing *Anderson v. Valdez*, 845 F.3d 580, 590 (5th Cir. 2016)); see also *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 570. Plaintiff is not required to plead anything more than "facts with the minimal specificity that would satisfy *Twombly* and *Iqbal*." *Arnold v. Williams*, 979 F.3d 262, 267 (5th Cir. 2020).

The doctrine of qualified immunity shields government officials acting within their discretionary authority from liability when their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known. See *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005). "In this circuit, the qualified immunity defense involves a shifting burden of proof." *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). The defendant official must first satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority. *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992). "An official acts within his discretionary authority when he performs non-ministerial acts within the boundaries of his official capacity." *Cronen v. Tex. Dep't of Human Servs.*, 977 F.2d 934, 939 (5th Cir. 1992). Once the defendant establishes that the challenged conduct was within the scope of his discretionary authority, the burden then shifts to the plaintiff to rebut the qualified immunity defense. *Salas*, 980 F.2d at 306.

Defendant Tindell has repeatedly stated that he is "entitled to qualified immunity" [Doc. 28, ¶¶ 2, 4, 9-10, 13, 17, 18, 21, 24, 26] and that the burden is on Plaintiff to show that Defendant

is not entitled to immunity [Doc. 28, ¶ 11-12], but Defendant has not properly raised the defense of qualified immunity. In the Fifth Circuit, "[t]he defendant must initially plead his good faith and establish that he was acting within the scope of his discretionary authority. Once the defendant has done so, the burden shifts to the plaintiff to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Whiting v. Tunica Cty.*, 222 F. Supp. 2d 809, 815 (N.D. Miss. 2002) (quoting *Salas v. Carpenter*, 980 F.2d 299, 306 (5th Cir. 1992) (citations omitted)). Defendant has failed to do his part in raising the defense of qualified immunity because he has not plead his good faith nor established that he was acting within the scope of his discretionary authority. Defendant has not raised the defense, so Plaintiff does not bear the burden of rebuttal. Because Defendant has failed to do the minimum required by law, he is not entitled to qualified immunity and there is no burden to shift to Plaintiff.

Even if Defendant had properly raised qualified immunity, he would not be "entitled" to the defense because Defendant unreasonably violated Plaintiff's clearly established constitutional rights. The test for qualified immunity is a two-part analysis. "First, the court must determine whether the plaintiff has *alleged* a violation of a clearly established constitutional right. If the plaintiff fails this step, the defendant is entitled to qualified immunity." *Bluitt v. Houston Indep. Sch. Dist.*, 236 F. Supp. 2d 703, 728 (S.D. Tex. 2002) (emphasis added). In the instant case, Plaintiff has plainly alleged violations of her clearly established constitutional rights, namely that Tindell participated in or failed to prevent discriminatory and retaliatory actions against Plaintiff and Tindell deprived Plaintiff of her procedural and substantive due process rights by transferring and terminating Plaintiff without adequate notice, a fair hearing, or legitimate cause.

If the plaintiff is successful in alleging a violation of a clearly established constitutional right, "the issue becomes the objective legal reasonableness of the defendant's conduct under the

circumstances." *Bluitt v. Houston Indep. Sch. Dist.*, 236 F. Supp. 2d 703, 728 (S.D. Tex. 2002). "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have known that their conduct violated the United States Constitution, or the federal statute as alleged by the plaintiff. The 'defendant's circumstances' include facts known to the defendant." *Harris v. Miss. Valley State Univ.*, 873 So. 2d 970, 979-80 (Miss. 2004) (citations removed). As the Commissioner of the MDPS, Tindell should have understood that the acts and/or omissions he was taking were violating Plaintiff's rights.

### 1. <u>Violation of Clearly Established Rights</u>

Plaintiff's Amended Complaint details violations of her clearly established constitutional rights. The Fourteenth Amendment's Equal Protection Clause guarantees that similarly situated individuals will be treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). By alleging that Defendant Tindell, acting under color of state law, subjected her to a discriminatory hostile work environment, denied her promotions based on gender, and orchestrated her retaliatory transfer and termination, Plaintiff has alleged a violation of her equal protection rights. These rights were so clearly established that any reasonable official in Tindell's position would have understood that such actions were unconstitutional.

The Fourteenth Amendment guarantees procedural due process, requiring that the state provide fair procedures before depriving a person of life, liberty, or property. *Zinermon v. Burch*, 494 U.S. 113, 125 (1990). Plaintiff alleges that she was denied these basic procedural protections, including adequate notice and a fair and impartial hearing before her transfer and termination. The right to due process before being deprived of public employment is a fundamental, clearly established right.

The Fifth Circuit has held that sex-based discrimination in public employment violates the Equal Protection Clause. *See Southard v. Texas Bd. of Criminal Justice*, 114 F.3d 539, 550 (5th Cir. 1997). In *Southard*, the court held that a plaintiff could bring an equal protection claim under § 1983 for sex discrimination in the workplace. Similarly, in *Stark v. University of Southern Mississippi*, 8 F. Supp. 3d 825, 836 (S.D. Miss. 2014), the court held that a plaintiff could bring a § 1983 claim for sex discrimination that paralleled her Title VII claim. Plaintiff has alleged that Tindell participated in or failed to prevent discriminatory and retaliatory actions, including her punitive transfer and termination. These allegations, if proven, would establish a violation of her equal protection rights.

The Fifth Circuit has also held that public employees are entitled to procedural due process before being deprived of their property interest in employment. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985). In *Fowler v. Smith*, 68 F.3d 124, 127 (5th Cir. 1995), the court held that a public employee must be given notice of the charges against her, an explanation of the employer's evidence, and an opportunity to present her side of the story before being terminated. Plaintiff has alleged that she was denied these basic procedural protections, including adequate notice and a fair and impartial hearing. These allegations are sufficient to state a claim for a violation of her due process rights.

A supervisor may be held liable under § 1983 for their own discriminatory acts or for failing to prevent constitutional violations by subordinates. *See Porter v. Epps*, 659 F.3d 440, 446 (5th Cir. 2011). The plaintiff has alleged that Tindell was directly involved in the discriminatory and retaliatory actions that led to her transfer and termination. These allegations are sufficient to overcome qualified immunity at the pleading stage.

**2. Tindell's Conduct Was Objectively Unreasonable**

It is well-settled in the Fifth Circuit that a supervisor may be held liable under § 1983 for their own discriminatory acts, or when their failure to supervise or train subordinates results in constitutional deprivation. *See, e.g., Salas v. Carpenter*, 980 F.2d 299 (5th Cir. 1992). Plaintiff has not merely alleged that Tindell was a supervisor with knowledge of the discriminatory environment but has alleged his direct involvement. The Amended Complaint avers that Tindell personally questioned Plaintiff about alleged derogatory statements, confiscated her phone, and was directly involved in the decision-making process that led to her transfer and termination (Am. Compl. ¶¶ 15, 16, 19, 22, 23, 24). These actions, in the context of the pervasive discriminatory environment, show that Tindell's conduct was objectively unreasonable.

Defendant Tindell's assertion of qualified immunity is without merit. Plaintiff has sufficiently pleaded violations of clearly established constitutional rights, and his actions were objectively unreasonable in light of those rights. The Court should deny Defendants' Motion to Dismiss Plaintiff's § 1983 claims.

**C.    Equal Protection**

"'The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike.'" *Normore v. Dallas Indep. Sch. Dist.*, 677 F.Supp.3d 494 (N.D. Tex. June 9, 2023) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 442-43, 105 S. Ct. 3249, 87 L. Ed. 2d 313 (1985)). When a § 1983 claim parallels a Title VII claim under a given set of facts, "the elements required to be established for each claim are deemed the same under both statutes." *Merwine v. Bd. of Trustees for State Institutions of Higher Learning*, 754 F.2d 631, 635 n.3 (5th Cir. 1985).

1.      **Sexual Harassment**

"In order to maintain a claim for sexual harassment under Title VII, and so under § 1983, a plaintiff must demonstrate: (1) that she belongs to a protected group; (2) that she was subjected to unwelcome sexual harassment; (3) that the harassment complained of was based upon sex; and (4) that the harassment complained of affected a term, condition, or privilege of employment. *Garcia v. City of Harlingen*, No. B-06-CV-134, 2009 U.S. Dist. LEXIS 4135, at 21 (S.D. Tex. Jan. 20, 2009) (citing *Watts v. Kroger*, 170 F.3d 505, 509 (5th Cir. 1999)). In order to satisfy the fourth element, plaintiff must "either demonstrate that she was subjected to a tangible employment action as a result of her acceptance or rejection of the unwelcome sexual harassment or that the unwelcome sexual harassment was so subjectively and objectively severe and pervasive as to alter the conditions of the victim's employment and create an abusive working environment," *Garcia v. City of Harlingen*, No. B-06-CV-134, 2009 U.S. Dist. LEXIS 4135, at 21 (S.D. Tex. Jan. 20, 2009) (citations removed). Tangible employment actions "require an official act of the enterprise, a company act, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761-62, 118 S. Ct. 2257, 141 L. Ed. 2d 633 (1998).

Plaintiff belongs to a protected group, was subjected to unwelcome sexual harassment [Doc. 17, ¶¶ 8 11-12, 14-15], and the harassment was based on Plaintiff's sex. After Plaintiff rejected the unwelcome sexual harassment [Doc. 17, ¶¶ 14-15], Plaintiff was subjected to adverse tangible employment action such as being passed over for promotion [Doc. 17, ¶¶ 8, 13] and no longer being invited to events that were crucial for her career advancement [Doc. 17, ¶ 15], and ultimately being fired [Doc. 17, ¶¶ 16-22]. Defendants influenced the ultimate decision for these

adverse tangle employment actions because individuals whom harassed Plaintiff and were ultimately turned down by her were the individuals who decided promotions, hosted the events, and/or were part of the decision to terminate Plaintiff's employment.

## 2. Sex Discrimination

To state a prima facie case for sex discrimination, a plaintiff must plead facts to show that (1) she is a member of a protected group; (2) she was subject to an adverse employment decision; (3) she was qualified for the position; and (4) similarly situated non-protected employees were treated more favorably than she. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). Further, "[d]iscriminatory purpose in an equal protection context implies the decision maker selected a particular course of action in part because of, and not just in spite of, the adverse impact it would have on an identifiable group." *Miguel v. Jack*, 23-CV-697-RP-SH, 2023 U.S. Dist. LEXIS 179272, 2023 WL 6466231, at 6 (W.D. Tex. Oct. 4, 2023) (quoting *Johnson v. Rodriguez*, 110 F.3d 299, 306 (5th Cir. 1997)).

Plaintiff has plead that she is a member of a protected group, that she was subject to an adverse employment decision, that she was qualified for the position, and similarly situated non-protected employees were treated more favorably. Plaintiff was qualified for all of the promotions she applied for but was passed over because she was a woman. The positions were filled with men, often who were less qualified. Plaintiff was specifically told that she would not be allowed to join because it was a "boy's club." Plaintiff was also discriminated against based on her sex when she was reassigned to a troop that was more than 100 miles from her home despite being a single mother to four children. Men in similar circumstances were not subjected to the same reassignment hardships. Defendant Tindell participated in these acts by allowing a policy that discriminates against women in favor of promoting men and refusing the protect the

constitutional rights of female employees.

**3.** **Due Process**

"The Fourteenth Amendment provides that no state shall 'deprive any person of life, liberty, or property, without due process of law.' U.S. Const. amend. XIV, § 1. The Fourteenth Amendment's Due Process Clause provides 'a guarantee of fair procedure.'" *A & T Express, LLC v. Town of Prentiss*, No. 2:23-cv-85-HSO-BWR, 2024 U.S. Dist. LEXIS 160428, at 9 (S.D. Miss. Sep. 6, 2024) (quoting *Zinermon v. Burch*, 494 U.S. 113, 125, 110 S. Ct. 975, 108 L. Ed. 2d 100 (1990)).

**i.** **Substantive**

"'To succeed with a claim based on substantive due process in the public employment context, the plaintiff must show two things: (1) that he had a property interest/right in his employment, and (2) that the public employer's termination of that interest was arbitrary or capricious.' *Lewis v. Univ. of Tex. Med. Branch*, 665 F.3d 625, 630 (5th Cir. 2011) (per curiam) (quotation omitted). To be considered "arbitrary and capricious," a decision must be "made without a rational connection between the known facts and the decision or between the found facts and the evidence.'" Id. at 631 (internal quotation omitted). *Brown v. City of Monroe*, No. 23-30882, 2024 U.S. App. LEXIS 27883, at 9 (5th Cir. Nov. 4, 2024).

The plaintiff had a protected property interest in her job as a public employee. Her termination by Plaintiffs was arbitrary and capricious. Defendants stated that Plaintiff was fired for (1) failure to notify supervisor of attorney general interview, (2) unprofessional conduct, and (3) misuse of state property. In her Notice of Appeal Before the Mississippi Employee Appeals Board, Plaintiff explains how the Defendants' reasoning was legally and factually incorrect, making the decision to terminate Plaintiff arbitrary and capricious.

Defendants used false information to make their decision. This decision was arbitrary and capricious. Defendants terminated Plaintiff's employment based on false or invalid information and conduct that is prevalent and rampant throughout MDPS. The decision to terminate Plaintiff despite other employees, including Defendant Tindell himself, engaging in the same or similar behavior is egregious and outrageous. This decision was arbitrary and capricious and as such a violation of Plaintiff's right to substantive due process.

Further, Defendant was present for Plaintiff's hearing and made the decision to terminate Plaintiff. Defendant violated Plaintiff's clearly established constitutional right to substantive due process and it was not objectively reasonable for Defendant to terminate Plaintiff based on the above reasons, therefore Defendant should not be granted qualified immunity for his actions against Plaintiff.

  ii.  <u>**Procedural**</u>

"Procedural due process entitles a public employee with a property right in his employment to notice of the charges against the employee, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Fowler v. Smith*, 68 F.3d 124, 127 (5th Cir. 1995). "The essential requirements of procedural due process under the Constitution are notice and an opportunity to respond*." Finch v. Fort Bend Indep. Sch. Dist.*, 333 F.3d 555, 562 (5th Cir. 2003). "The fundamental requirement . . . is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). "'A procedural due process claim consists of two elements: (i) deprivation by state action of a protected interest in life, liberty, or property, and (ii) inadequate state process.'" *A & T Express, LLC v. Town of Prentis*s, No. 2:23-cv-85-HSO-BWR, 2024 U.S. Dist. LEXIS 160428,

at 10 (S.D. Miss. Sep. 6, 2024) (quoting *Reed v. Goertz*, 598 U.S. 230, 236, 143 S. Ct. 955, 215 L. Ed. 2d 218 (2023)).

Defendants reassigned Plaintiff to Troop D, located approximately 100 miles away from her home. This involuntary transfer was arbitrary and capricious as Plaintiff is a single mother of four children, which was known to Defendants. The plaintiff filed a grievance in response to this decision. Defendants allege that Plaintiff's transfer was not a grievable event [Doc. 28, ¶ 25]. The Mississippi State Employee Handbook 8.1 states, "The following issues are grievable and appealable to the Mississippi Employee Appeals Board (MEAB) after exhausting the MSPB grievance procedure:

A. Written Reprimands issued pursuant to Section 7.5 of the MSPB Handbook. Non-state service employees may only grieve Written Reprimands on the basis of alleged violations of state or federal law.

B. Open Competitive Appointments or Promotions into a Permanent State Service position alleged to be in violation of MSPB or agency policy;

C. Promotions or appointments alleged to be in violation of state and/or federal law;

D. Involuntary relocation of an employee as an alleged disciplinary measure or for arbitrary or capricious reasons; or

E. Alleged violations of Mississippi Code Annotated §25-9-171 through §25-9-177."
Defendants denied Plaintiff's procedural due process rights by refusing to give Plaintiff a fair and unbiased hearing for an obvious issue that is specifically listed as a grievance. In response to Plaintiff proceeding with her grievance for her arbitrary and capricious transfer, Defendants sent Plaintiff a notice letter, held a sham hearing, and issued a termination decision.

The plaintiff was not afforded her constitutional rights to procedural due process during

her termination hearing. "The fundamental requirement . . . is the opportunity to be heard 'at a meaningful time and meaningful manner.'" *Mathews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893, 47 L. Ed. 2d 18 (1976) (quoting *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S. Ct. 1187, 14 L. Ed. 2d 62 (1965)). Plaintiff was not given the opportunity to be heard at a meaningful time or in a meaningful manner. Plaintiff was forced to present evidence at her termination hearing to the same individuals who took part in arbitrarily and capriciously transferring Plaintiff as well as those who falsely told Plaintiff her transfer was not grievable and who wrongly denied Plaintiff a hearing for her said transfer. There was nothing meaningful about the hearing Plaintiff was given as the outcome had already been decided before she walked in the door; Plaintiff's hearing was a sham Defendants held in an attempt to meet the minimum requirements of due process, which they did not achieve. Defendant violated Plaintiff's clearly established constitutional right to procedural due process by denying Plaintiff a meaningful manner in which to be heard. It was not objectively reasonable for Defendant to hold a hearing comprised of individuals who were biased against Plaintiff to decide whether Plaintiff should be terminated, therefore Defendant should not be granted qualified immunity for his actions against Plaintiff.

D.     **Plaintiff's Title VII Claims Are Timely and Exhaustion Requirements Were Met**

Defendants argue that Plaintiff's Title VII claims should be dismissed for failure to exhaust administrative remedies. Specifically, Defendants contend that Plaintiff's claims for sex discrimination and hostile work environment are time-barred because they were not explicitly included in her EEOC charge. However, Defendants' argument misconstrues the scope of the exhaustion requirement under Title VII. The Fifth Circuit has consistently held that "the scope of the exhaustion requirement is that 'the scope of the civil action is confined only by the scope of the administrative investigation that can reasonably be expected to follow the charge of

discrimination.'" *Fine v. GAF Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). A plaintiff is not required to allege every specific instance of discrimination or harassment in her EEOC charge. The charge must simply be sufficient to trigger an investigation that could reasonably be expected to uncover the discriminatory conduct at issue.

Here, Plaintiff's EEOC charge alleged that she was retaliated against based on her sex, denied due process, and subjected to discriminatory treatment. These allegations were more than sufficient to trigger an investigation that could reasonably be expected to uncover evidence of sex discrimination and a hostile work environment. The EEOC's investigation into Plaintiff's retaliation claim would necessarily involve an examination of the underlying discriminatory conduct that allegedly prompted the retaliation.

Moreover, the Fifth Circuit has recognized that "it is the nature of the charge, not the label, which controls." *Fine*, 995 F.2d at 578. The EEOC charge should be liberally construed to encompass all claims that are reasonably related to the allegations contained therein. Plaintiff's claims for sex discrimination and hostile work environment are related to her allegations of retaliation and discriminatory treatment. All of these claims arise from the same underlying pattern of gender-based discrimination and harassment that Plaintiff allegedly experienced during her employment with MDPS.

Therefore, Plaintiff's Title VII claims are not time-barred and should not be dismissed for failure to exhaust administrative remedies.

## E. Plaintiff Has Stated Plausible Claims for Relief Under Title VII

To establish a prima facie case of sex discrimination under Title VII, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she

suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees outside the protected class. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).

Plaintiff's Amended Complaint satisfies these elements. She alleges that she is a female, was qualified for her position as a law enforcement officer, and suffered adverse employment actions, including denial of promotions, a hostile work environment, a punitive transfer, and termination. She further alleges that these adverse actions were taken because of her sex and that similarly situated male officers were treated more favorably. These allegations, if proven, would establish a violation of Title VII.

Defendants argue that Plaintiff has failed to identify specific comparators to support her claims of discrimination. However, the Fifth Circuit has held that "a Title VII plaintiff does not have to demonstrate an exact correlation with another employee's situation." *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009). The plaintiff must only show that the alleged comparators are "similarly situated" in "all relevant respects." *Id.* Plaintiff has alleged that less qualified male officers were promoted to the specialized units that she was denied, and that male officers who engaged in misconduct were not subjected to the same adverse employment actions as she was. These allegations are sufficient to establish that Plaintiff was treated less favorably than similarly situated male officers.

Therefore, Plaintiff has stated plausible claims for relief under Title VII, and Defendants' Motion to Dismiss should be denied.

**F.** **Plaintiff's State Law Claims Are Viable**

Defendants attempt to dismiss Plaintiff's state law claims for breach of contract and intentional interference with contract. These arguments are unavailing and misapprehend Mississippi law.

Mississippi law recognizes implied employment contracts, and Plaintiff has alleged facts sufficient to establish such a contract. *See Perry v. Sears, Roebuck & Co.*, 508 So. 2d 1086, 1088 (Miss. 1987). Mississippi law allows for tortious interference claims against corporate officers who act outside the scope of their employment or with malice. *See Morrison v. Mississippi Enterprise for Technology*, 798 So.2d 567, 574 (Miss. Ct. App. 2001).

Mississippi law recognizes implied employment contracts arising from "employer policies or promises, and the employer's course of conduct." *Bobbitt v. The Orchard, Ltd*., 603 So. 2d 356, 361 (Miss. 1992). The Amended Complaint alleges specific MDPS policies and practices creating reasonable expectations of:

- Continued employment absent just cause

- Fair evaluation procedures

- Equal opportunity for advancement

- Protection from discrimination

The plaintiff has sufficiently plead all elements of this claim. She alleges the existence of an implied employment contract with MDPS. She further alleges that Defendants, including Tindell, knew of this contract and intentionally interfered with it by engaging in discriminatory and retaliatory conduct that led to her termination. This breach and interference caused Plaintiff to lose the benefits of her employment, including her salary and other benefits, and she suffered damage as a result.

Defendants argue that Tindell, as an officer of MDPS, cannot be held liable for tortious interference. However, Mississippi law recognizes that corporate officers can be held individually liable for tortious interference if they act outside the scope of their employment or with malice. *Morrison v. Mississippi Enterprise for Technology, Inc.*, 789 So.2d 567, 574 (Miss. Ct. App. 2001). Plaintiff has alleged that Tindell acted with discriminatory animus and malice in his actions towards her. This is sufficient to overcome the dismissal of the tortious interference claim against Tindell.

To state a claim for tortious interference, Plaintiff must allege: (1) the existence of a contract, (2) defendant's knowledge of the contract, (3) intentional interference causing breach, and (4) resulting damages. *Par Industries, Inc. v. Target Container Co*., 708 So. 2d 44, 48 (Miss. 1998). The Amended Complaint satisfies each element by alleging that Tindell knowingly interfered with Plaintiff's employment relationship through discriminatory and retaliatory actions.

While corporate officers generally cannot be liable for interfering with their employer's contracts, this protection does not extend to actions taken outside the scope of employment or with malice. *Shaw v. Burchfield,* 481 So. 2d 247, 255 (Miss. 1985). Plaintiff's allegations that Tindell acted with discriminatory animus remove his conduct from this protection.

Therefore, Plaintiff's state law claims are viable, and Defendants' Motion to Dismiss should be denied.

## IV. CONCLUSION

For the foregoing reasons, Plaintiff Ivana Williams respectfully requests that this Court DENY Defendant's Motion to Dismiss in its entirety and permit this case to proceed to discovery. Plaintiff further requests such other and further relief as the Court deems just and

proper.

Dated this the 24 day of February, 2025.

Respectfully submitted,
IVANA WILLIAMS

By:  /s/Robert Ogletree_____
ROBERT B. OGLETREE(MSB#10427)
ATTORNEY FOR PLAINTIFF

Robert B. Ogletree (MSB# 10427)
ROBERT B. OGLETREE PLLC
1640 Lelia Drive, Suite 105
Jackson, MS 39216
Telephone: (601) 345-2900
Email: rbogletree@gmail.com

## CERTIFICATE OF SERVICE

I, the undersigned attorney, hereby certify that I have this day caused to be electronically filed the foregoing with the Clerk of the Court using the ECF system which sent notification of such filing to all counsel of record.

SO CERTIFIED this 24 day of February, 2025.

/s/ Robert B. Ogletree_____

ROBERT B. OGLETREE