UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

IVANA WILLIAMS                                                    PLAINTIFF

V.                                    CIVIL ACTION NO. 3:24-CV-606-KHJ-MTP

MISSISSIPPI DEPARTMENT OF                                        DEFENDANTS
PUBLIC SAFETY, et al.

ORDER

Before the Court is Defendants Mississippi Department of Public Safety

("MDPS") and Sean Tindell's [27] Motion to Dismiss. The Court grants the [27]

Motion. But the Court allows Williams an opportunity to amend her [17] Amended

Complaint by July 21, 2025.

I.      Background

The Court leads with the summarized facts. Plaintiff Ivana Williams

("Williams") was hired by MDPS in March 2018 as a law enforcement officer for the

Mississippi Highway Patrol. [17] ¶¶ 1, 7. Williams describes herself in this role as

dedicated and consistent; she believes her job performance often surpassed that of

her male counterparts. *Id.* ¶ 8. Despite her qualifications, dedication, and

performance, however, Williams claims she was "systematically denied

opportunities for advancement and subjected to adverse treatment solely because of

her sex." *Id.* While employed by MDPS, Williams submits she experienced the

denial of desired promotions, verbal and physical sexual harassment from her male

counterparts, and retaliatory transfers. *Id.*

To elaborate, Williams states the "pervasive pattern of sexual harassment and discriminatory practices . . . began during her training at the Patrol School and persisted throughout her career." *Id.* ¶ 9. According to Williams, she and other female employees were regularly degraded by male employees of MDPS. *Id.* ¶¶ 11–12. This degrading treatment included sexually suggestive remarks and commands, as well as inappropriate touching. *See id.*[1] Williams points out that "[m]ale officers were not subjected to comparable treatment." *Id.* ¶ 12.[2]

As for her employment status, Williams maintains that she was "systematically excluded" from advancements and promotions "due to her sex." *Id.* ¶ 13. For example, when Williams graduated from Patrol School, she repeatedly applied for the Special Operations Group ("SOG") and the motorcycle team, but she was repeatedly denied admission—"while less-qualified male officers were accepted." *Id.*[3]

Outside of work, Williams experienced similar treatment. For example, Tindell often hosted guests for social gatherings at a residence he co-owned. *Id.* ¶ 15. And Williams "was among those welcomed to this residence on several occasions

---

[1] Williams asserts that she was "ordered to lie down and smile in a sexual manner and jump up and down for the amusement of male cadets and instructors" and that "[m]ale cadets and instructors patt[ed] [her] on the buttocks in public view." [17] ¶ 11.

[2] In fact, she states, "[m]ale officers who engaged in egregious misconduct, including sexual harassment, professional violations, and criminal activity, were treated with leniency and remained employed, often receiving reassignment or reinstatement instead of termination." [17] ¶ 20.

[3] Williams says she was told the motorcycle team was a "boy's club," so she could not join. [17] ¶ 13.

. . . ." *Id.* It was "suggested" to her "that certain connections made [there] could be beneficial to her professional advancement." *Id.* Particularly, Williams mentions that at one of these gatherings, she was "publicly humiliated when a male officer demanded, 'Let me see your tits,' and a superior officer propositioned her in front of other[s] . . . ." *Id.* ¶ 14. The invitations ceased when Williams declined such "overtures." *Id.* ¶ 15. And "following her absence from these gatherings," Williams claims she encountered "unforeseen challenges . . . in her career path." *Id.*

In November 2023, Williams states Tindell directed her to come to his office, where he "began questioning [her] as to whether she had made a derogatory statement about the Defendants, which she denied." *Id.* ¶ 16.[4] Later that year, allegedly without due process or proper notice, Williams claims she was "reassigned and/or transferred to a district over 100 miles from her home without [a] legitimate, non-discriminatory justification." *Id.* ¶ 17. She highlights this reassignment "created undue burdens as a single mother of four children, a fact known to her superiors who issued the reassignment." *Id.* ¶ 18. And she emphasizes that following the reassignment, she submitted a grievance, which purportedly led to "retaliatory actions, including receipt of an alleged due process hearing that resulted in her ["wrongful"] termination on February 13, 2024." *Id.* ¶ 19; *see also id.* ¶ 1.

---

[4] Williams also complains Tindell "took possession of [her] phone" at this meeting. [17] ¶ 16.

Williams filed a charge with the Equal Employment Opportunity Commission ("EEOC") in June 2024, and she received a right-to-sue letter the next month. *Id.* ¶ 24; [1-1]; [1-2]. In October 2024, she brought suit against MDPS. *See* Compl. [1]. Later, she amended her [1] Complaint to include Tindell and ten "John Does," *see* [17],[5] and to bring Title VII claims against MDPS, Section 1983 claims against Tindell, and two state-law contract claims. [17] ¶¶ 25–48.

MDPS and Tindell now move to dismiss the [17] Amended Complaint. [27]. They argue Tindell is entitled to qualified immunity on all Section 1983 claims, and the remaining allegations fail to state a plausible claim for relief under Federal Rule of Civil Procedure 12(b)(6). *See id.*

The Court takes up the [27] Motion, addressing each claim below.

II.     Standard

Federal Rule of Civil Procedure 12(b)(6) permits the dismissal of a complaint if it fails to state a claim upon which relief can be granted. When reviewing a complaint under Rule 12(b)(6), the Court only considers the complaint, documents attached to or incorporated in it, and matters subject to judicial notice. *Benfer v. City of Baytown*, 120 F.4th 1272, 1278 n.2 (5th Cir. 2024). The Court must accept all factual allegations in the complaint as true, but it is not bound to accept legal conclusions, conclusory statements, or bare assertions without factual support. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

---

[5] These John Does are "those other persons, firms, corporations[,] or other entities whose wrongful conduct[] caused or contributed to the injuries and damages" of Williams; they are being sued individually for violating her constitutional, statutory, and common-law rights under color of law. [17] ¶ 4.

To survive a motion to dismiss, a complaint must include enough factual allegations to state a facially plausible claim to relief. *Id.* A claim has facial plausibility if the Court may reasonably infer the defendant's culpability from the facts the plaintiff alleges. *Id.* If a complaint fails to satisfy Rule 12(b)(6), courts should liberally grant leave to amend "when the plaintiff might be able to state a claim based on the underlying facts and circumstances." *Ass'n of Am. Physicians & Surgeons Educ. Found. v. Am. Bd. of Internal Med.*, 103 F.4th 383, 394 (5th Cir. 2024) (citation modified). But if amendment would be futile, a Rule 12(b)(6) dismissal should be with prejudice. *See HCB Fin. Corp. v. McPherson*, 8 F.4th 335, 345–46 (5th Cir. 2021); *see also Jacquez v. Procunier*, 801 F.2d 789, 792 (5th Cir. 1986) ("At some point a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit.").

When "a qualified immunity defense is asserted in a motion to dismiss, the district court must—as always—do no more than determine whether the plaintiff has filed a short and plain statement of [her] complaint, a statement that rests on more than conclusions alone." *Westfall v. Luna*, 903 F.3d 534, 542 (5th Cir. 2018) (per curiam) (citation modified). This statement must "state facts which, if proved, would defeat a claim of immunity." *Id.* (citation modified). And "[a] court must carefully scrutinize the complaint before subjecting public officials to the burdens of broad-reaching discovery." *Santander v. Salazar*, 133 F.4th 471, 478 (5th Cir. 2025) (citation modified).

III.    Analysis

The Court addresses Williams's (A) Title VII claims against MDPS, her (B) Section 1983 equal-protection claim against Tindell, her (C) Section 1983 due-process claims against Tindell, her (D) breach-of-contract claim, and finally her (E) intentional-interference-with-contract claim. *See* [17].

A. Title VII

The Court begins with Williams's Title VII claims against MDPS. [17] ¶¶ 25–31.

Williams claims she was subject to (1) sex-discrimination (disparate treatment), (2) harassment (hostile work environment), and (3) retaliation while employed by MDPS. *Id.* MDPS responds that these claims must be dismissed because they are time-barred and fail to state a plausible claim upon which relief may be granted. Mem. Supp. Mot. [28] at 14–22.

1. Sex Discrimination (Disparate Treatment)

Williams alleges she was discriminated against "on the basis of sex" in violation of Title VII of the Civil Rights Act of 1964. [17] ¶ 25; *see also id.* ¶¶ 26–31.

a. Time

Any claims related to interactions before December 28, 2023, are foreclosed by Williams's failure to exhaust. This includes Williams's failure-to-promote claim.

Before filing an action under Title VII, 42 U.S.C. § 2000e-5(e)(1) requires plaintiffs "to exhaust their administrative remedies by filing a charge of discrimination with the [EEOC] within 180 days of the alleged discrimination." *Davis v. Fort Bend County*, 893 F.3d 300, 303 (5th Cir. 2018) (citing § 2000e-

5(e)(1)). "Any claims based on employment actions occurring more than 180 days before [the date the EEOC charge was filed] may not be pursued under Title VII." *Harding v. Huntington Ingalls Indus.*, No. 1:15-CV-274, 2015 WL 6812242, at *2 (S.D. Miss. Nov. 5, 2015).

Williams filed her [1-1] EEOC Charge on June 25, 2024. EEOC Charge [1-1] at 1. December 28, 2023, falls 180 days before that date. So all claims preceding December 28, 2023, are time-barred. *See Harding*, 2015 WL 6812242, at *2.

Williams was hired by MDPS in 2018. [17] ¶ 7. Absent specific dates, Williams claims that "[t]hroughout her employment," she was "systematically . . . subjected to adverse treatment solely because of her sex." *Id.* ¶ 8. She submits she was discriminated against "on the basis of sex" by being denied "employment opportunities in violation of Title VII of the Civil Rights Act of 1964" and being subject to "different terms and conditions of employment . . . ." *Id.* ¶¶ 25–26. Specifically, Williams asserts she was denied "promotions to specialized units, such as the [SOG] and motorcycle team, despite her superior qualifications," "while less-qualified male officers were accepted." *Id.* ¶¶ 8, 13.

The next date Williams mentions is November 2023, when she met with Tindell in his office. *Id.* ¶ 16. As these limited dates precede December 28, 2023, any claims within them may not be pursued under Title VII. *See Harding*, 2015 WL 6812242, at *2. So to the extent that Williams brings a Title VII sex-discrimination claim based on her interactions preceding that date, it is time-barred and dismissed for failure to exhaust.

### b. Failure to State a Claim

Title VII makes it unlawful for an employer to "discharge . . . or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex . . . ." 42 U.S.C. § 2000e-2(a)(1). "[T]here are two ultimate elements a plaintiff must plead to support a disparate treatment claim under Title VII: (1) an adverse employment action, (2) taken against a plaintiff *because of* her protected status." *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 767 (5th Cir. 2019) (citation modified).

### i. Adverse Employment Action

Williams has plausibly alleged an adverse employment action: termination. [17] ¶ 1, 19; *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) ("It is clear that an adverse employment action occurred here—[Plaintiff] was fired.").

### ii. Causation

Drawing all reasonable inferences in Williams's favor, the Court finds Williams has not pled "sufficient facts to make it plausible that [she] was discriminated against *because of* [her] protected status." *Olivarez v. T-Mobile, USA, Inc.*, 997 F.3d 595, 601 (5th Cir. 2021) (citation modified); *see also Cicalese*, 924 F.3d at 767.

The factual allegations about Williams's termination are scant. *See* [17]. She says: her termination was "wrongful," her termination resulted from a "retaliatory" due process hearing, and her termination process was "procedurally deficient." *Id.* ¶¶ 1, 19, 38. She claims the "[i]ndividuals responsible for [her] transfer and

8

termination . . . retaliated against [her] for asserting her rights under Title VII and challenging her discriminatory reassignment and treatment." *Id.* ¶ 39. And of note, there are allegations supporting an "obvious alternative explanation" for her termination. *Pickett v. Tex. Tech. Univ. Health Scis. Ctr.*, 37 F.4th 1013, 1034 (5th Cir. 2022) (citation modified); *see* [17] ¶ 16; [1-1] (discussing a "sexual assault" accusation against Williams and a subsequent internal affairs investigation).

Absent allegations that the final decision maker at MDPS harbored discriminatory animus toward her, Williams's [17] Amended Complaint has not "[nudged] the [sex-discrimination] claim[] across the line from conceivable to plausible." *Olivarez*, 997 F.3d at 600 (citation modified). Because Williams has not plausibly pled facts that would permit a reasonable inference that MDPS terminated her *because of* her sex, this claim is dismissed without prejudice.[6]

### 2. Harassment (Hostile Work Environment)

Williams submits MDPS discriminated against her "on the basis of her gender by subjecting her to sexual harassment, and different terms and conditions of employment which created an objectively hostile work environment." [17] ¶ 26. This claim, to the extent that it concerns interactions before December 28, 2023, is time-barred, and it is otherwise dismissed for failure to exhaust. *See supra* pp. 6–7.

---

[6] Even if Williams could argue her transfer to "a district over 100 miles from her home," *see* [17] ¶ 17, was an adverse employment action because it caused her "some harm," *see Muldrow v. City of St. Louis*, 601 U.S. 346, 350, 355 (2024), she has not plausibly alleged the transfer was *because of* her sex. *See Olivarez*, 997 F.3d at 601. Further, any claims relating to Williams's transfer are likely time-barred because "late 2023" is likely before December 28, 2023. *See* [17] ¶ 17; *see supra* pp. 6–7.

a.  Time

Any claims related to interactions before December 28, 2023, are foreclosed by Williams's failure to exhaust.

Williams filed her [1-1] EEOC Charge on June 25, 2024. EEOC Charge [1-1] at 1. 180 days preceding that date is December 28, 2023, and all claims arising before that date are barred from relief. *See Harding*, 2015 WL 6812242, at *2.

Williams was hired by MDPS in 2018. [17] ¶ 7. Absent specific dates, Williams claims that "[t]hroughout her employment," she was "systematically . . . subjected to adverse treatment solely because of her sex." *Id.* ¶ 8. Such treatment included "[v]erbal and physical sexual harassment by male instructors and officers," "demands to perform demeaning tasks for the amusement of male cadets and instructors," "sexually suggestive remarks to female trainees," and "sexual advances." *Id.* ¶¶ 8–12; *see also supra* note 1.

As these limited dates all precede December 28, 2023, any claims related to these dates may not be pursued under Title VII. *See Harding*, 2015 WL 6812242, at *2. So to the extent that Williams brings a Title VII hostile work environment claim based on interactions preceding that date, it is dismissed as time-barred.

b.  Failure to Exhaust

Timing aside, Williams failed to exhaust this claim.

"Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court, meaning a plaintiff must file a timely charge with the EEOC . . . ." *Stingley v. Watson Quality Ford*, 836 F. App'x 286, 291

(5th Cir. 2020) (per curiam) (citation modified). "One of the central purposes of [an EEOC charge] is to put employers on notice of the existence and nature of the charges against them." *Ernst v. Methodist Hosp. Sys.*, 1 F.4th 333, 338–39 (5th Cir. 2021) (citation modified). "The universe of claims a plaintiff can properly advance in a Title VII suit is set by the contours of the [charge]." *Stingley*, 836 F. App'x at 291. So "[c]ourts should not condone lawsuits that exceed the scope of EEOC exhaustion, because doing so would thwart the administrative process and peremptorily substitute litigation for conciliation." *Id.* (citation modified).

In short, plaintiffs are confined to the claims on the face of their EEOC charge. *See id.* When plaintiffs go beyond these boundaries, courts may dismiss their claims for failure to exhaust. *See Vann v. City of Meridian*, No. 3:21-CV-305, 2023 WL 4919671, at *3–4 (S.D. Miss. Aug. 1, 2023).

MDPS argues that "[u]nder no circumstances does [Williams's] [1-1] Charge put MDPS on notice of any potential sexual harassment or hostile work environment claims." [28] at 17. Williams argues otherwise. *See* Mem. Supp. Resp. [31] at 17–18. Reviewing the [1-1] Charge, the Court determines Williams exhausted neither a sexual-harassment nor a hostile-work-environment claim.

In her [1-1] EEOC Charge, Williams submits:

> I was employed with [MDPS] on March 6, 2018. My most recent position was Trooper First Class. On February 13, 2024, I was terminated. . . . I never received any notice of wrongdoing. However, on December 29, 2023, I was given orders to transfer to Troop D by January 2, 2024. On January 6, 2024, I filed a grievance with the department. I was never given a reason as to why I was transferred. I was never charged or found guilty of any accusations. After fil[]ing my second grievance on the transfer, I then received a notice for Due Process Hearing. I had my

11

hearing February 9, 2024, stating I violated Code of Ethics violation and Misuse of State Property. I fil[]ed an appeal with the Employee Appeal Board and currently have a court date set for October 2024. I believe I have been discriminated and retaliated against due to my sex ([f]emale) in violation of Title VII of the Civil Rights Act of 1964, as amended.

[1-1] at 1.

That does not put MDPS on notice of a potential sexual-harassment or hostile-work-environment claim. *See id.* Rather, the [1-1] Charge provides MDPS notice of only sex-discrimination and retaliation claims. *See id.* And, as MDPS highlights, "the Fifth Circuit has made clear in unpublished opinions that it's not reasonable to draw a hostile-work-environment claim from allegations of discrete discrimination." *Vann*, 2023 WL 4919671, at *4 (collecting cases).

In response, Williams offers "boilerplate law and conclusory facts." *Id.*; *see* [31] at 12–13, 17–18. And "[t]hat is not enough to overcome the Fifth Circuit's consistent findings that hostile-work-environment claims exceed the scope of what can reasonably grow out of an EEOC investigation into disparate-treatment and retaliation claims." *Vann*, 2023 WL 4919671, at *4; *see also Turner v. Novartis Pharms Corp.*, 442 F. App'x 139, 141 (5th Cir. 2011) (per curiam) ("[Plaintiff] filed two EEOC charges, one alleging discrimination and one alleging retaliation. Neither of the two charges reasonably encompasses [her] new claim of a hostile work environment.").

Williams's sexual-harassment/hostile-work-environment claim has not been exhausted, so it is not properly before the Court. This claim is dismissed with prejudice.

3.  Retaliation

Williams claims her "complaints of gender discrimination were a but for cause of the retaliation taken against her for reporting and opposing gender discrimination." [17] ¶ 30. This claim is dismissed.

To state a Title VII retaliation claim, a plaintiff must plausibly allege that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there is a causal link between the protected activity and the adverse employment action. *Wright v. Union Pac. R.R.*, 990 F.3d 428, 433 (5th Cir. 2021). Title VII's antiretaliation provision makes it unlawful for an employer to discriminate against an employee because she "'opposed any practice' made unlawful by Title VII or 'made a charge, testified, assisted, or participated in' a Title VII proceeding or investigation." *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 56 (2006) (quoting 42 U.S.C. § 2000e-3(a)). These actions constitute a protected activity. *Id.*

The Court need only reach the first element.

After submitting a grievance challenging her reassignment, Williams argues she "faced retaliatory actions" by Defendants in the form of "an alleged due process hearing that resulted in her termination . . . ." [17] ¶ 19. But Williams does not allege that her grievance contained any mention of sex discrimination. She does not allege that the grievance "oppose[d] or protest[ed] [sex] discrimination or any other unlawful employment practice under Title VII." *Moore v. UPS, Inc.*, 150 F. App'x 315, 319 (5th Cir. 2005) (per curiam). For this reason, Williams has not plausibly

alleged that the filing of the grievance was a protected activity. *See id.*[7] This claim is dismissed without prejudice.

B.  Section 1983 Equal Protection

The Court turns to Williams's Section 1983 equal-protection claim against Tindell. [17] ¶¶ 32–36.

Williams alleges a violation of her Fourteenth Amendment right to equal protection under the law by Tindell. *Id.* She claims Tindell, in his individual capacity and acting under color of law, "violat[ed] her equal protection right to be free from intentional discrimination motivated by her gender in public employment." *Id.* ¶ 34. According to her, Tindell's actions "were intentional, malicious, and in reckless disregard of [her] constitutional rights." *Id.* ¶ 35. And "[a]s a direct result of these constitutional violations, [Williams] suffered damages, including lost income, emotional distress, and harm to her career." *Id.* ¶ 36. Tindell responds that he is entitled to qualified immunity and that Williams fails to state a valid claim upon which relief may be granted. [28] at 5–10.[8]

---

[7] The Court notes: Although it constitutes a protected activity, Williams did not file her [1-1] EEOC charge until June 2024. Because she was transferred and terminated before that date, the filing of that [1-1] Charge could not have caused either.

[8] Because Williams is alleging sex discrimination in public employment, she may assert claims under both Title VII and the Equal Protection Clause under Section 1983. *See Southard v. Tex. Bd. of Crim. Just.*, 114 F.3d 539, 549–50 (5th Cir. 1997) (citing *Johnston v. Harris Cnty. Flood Control Dist.*, 869 F.2d 1565, 1573 (5th Cir. 1989)). And when Section 1983 serves as a parallel remedy with Title VII in a sex-discrimination suit, the elements under the claims are the same under both statutes. *See Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 166 (5th Cir. 2007); *see also* [28] at 8.

The Court has already determined that Williams could allege more facts supporting a Title VII disparate-treatment claim, so it proceeds to address her Section 1983 disparate-treatment claim. *See supra* pp. 6–9. Because Section 1983 does not have an exhaustion requirement, *see Porter v. Nussle*, 534 U.S. 516, 523 (2002), the Court also addresses her

Tindell is entitled to qualified immunity. So the Court dismisses Williams's Section 1983 equal-protection claim against Tindell without prejudice.

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370–71 (5th Cir. 2011) (en banc). Once a defendant has invoked qualified immunity, "the burden shifts to the plaintiff to demonstrate the inapplicability of the defense." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009). "The basic steps of [the] qualified immunity inquiry are well-known: a plaintiff seeking to defeat qualified immunity must show: (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct." *Morgan,* 659 F.3d at 371 (citation modified). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Wetherbe v. Tex. Tech Univ. Sys.*, 138 F.4th 296, 301 (5th Cir. 2025) (citation modified).

"Qualified immunity is inappropriate only where the officer had fair notice—in light of the specific context of the case, not as a broad general proposition—that his *particular* conduct was unlawful." *Id.* (citation modified).

"Because vicarious liability is inapplicable to . . . [Section] 1983 suits, a plaintiff must plead that each [g]overnment-official defendant, through the official's

---

Section 1983 harassment claim. The retaliation claim need not be addressed further. *See Hickman v. City of Newton*, No. 3:24-CV-383, 2025 WL 1699359, at *11–12 (S.D. Miss. June 17, 2025).

own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. So Tindell is not liable for the actions of his subordinates. *See id.* Reaching only the first element, the Court finds Williams has not sufficiently rebutted qualified immunity "by establishing that [Tindell's] allegedly wrongful conduct violated clearly established law." *Pierce v. Smith*, 117 F.3d 866, 872 (5th Cir. 1997) (citation modified).

Williams has not plausibly alleged that Tindell, through his own particular conduct, violated her constitutional right to equal protection under the law.

In her [17] Amended Complaint, Williams alleges:

- Tindell "acted under color of state law to violate [Williams's] constitutional, statutory[,] and common law rights . . . ." [17] ¶ 3.
- Tindell "subjected [Williams] to different terms and conditions of employment and overt sexual harassment based on her female gender which created an objectively hostile work environment." *Id.* ¶ 10.[9]
- Tindell "own[ed] a residence . . . [that] served as a gathering place where [Tindell] and his associates frequently hosted guests. [Williams] was among those welcomed to this residence on several occasions, invited by . . . Tindell . . . ." *Id.* ¶ 15.[10]
- Tindell "directed" Williams "to come to [his] office, where he began questioning [Williams] as to whether she had made a derogatory statement about the Defendants, which she denied." *Id.* ¶ 16.
- Tindell "took possession of [Williams's] phone." *Id.*
- Tindell "deprived [Williams] of her rights under the Equal Protection Clause of the Fourteenth Amendment by subjecting her to sex-based discrimination and harassment." *Id.* ¶ 32.

---

[9] Williams fails to allege that Tindell individually demeaned or degraded her, as various "instructors," "male cadets," "superior officers," and "male officers" allegedly did. [17] ¶¶ 8, 11–12, 14.

[10] At these social gatherings, Williams asserts she was publicly humiliated by a "male officer," she was propositioned by a "superior officer," and she declined certain overtures from "other guests." These allegations do not individually name Tindell. [17] ¶¶ 14–15.

These allegations of disparate treatment and harassment, accepted as true, do not plausibly allege a constitutional violation by Tindell. S*ee Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012) ("[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm [she] has alleged and that defeat a qualified immunity defense with equal specificity.").[11] First, many of these allegations are merely conclusory generalizations that fail to contain factual specificity regarding Tindell's particular conduct. *See* [17] ¶¶ 3, 10, 32. And second, the allegations that do contain factual specificity, *see id.* ¶¶ 15–16, are simply not violations of the clearly established constitutional right to equal protection under the law.

Because "[q]ualified immunity is applicable unless the official's conduct violated a clearly established constitutional right," *Pearson v. Callahan*, 555 U.S. 223, 232 (2009), Tindell is entitled to qualified immunity, and the equal-protection claim is dismissed without prejudice.

C.  Section 1983 Due Process

The Court turns next to Williams's Section 1983 due-process claims against Tindell. [17] ¶¶ 37–42.

Williams alleges a violation of her Fourteenth Amendment rights to procedural and substantive due process by Tindell. *See id.* She claims that Tindell,

---

[11] And Williams does not provide existing precedent that establishes otherwise. *See Morrow v. Meachum*, 917 F.3d 870, 875–76 & n.5 (5th Cir. 2019).

in his individual capacity and acting under the color of state law, "deprived [her] of her procedural due process rights guaranteed under the Fourteenth Amendment by transferring her and then terminating her employment without adequate notice, a fair hearing, or legitimate cause." *Id.* ¶ 37. She maintains she "had a protected property interest in her job as a public employee, which was unlawfully deprived through a retaliatory and procedurally deficient transfer and termination process." *Id.* ¶ 38. This process, according to Williams, "lacked due process, transparency[,] and impartiality, as it was tainted by bias . . . ." *Id.* ¶ 40. Williams claims this lack of due process caused her to suffer "significant damages . . . ." *Id.* ¶ 42.

Again, Tindell responds that he is entitled qualified immunity, and that Williams fails to state a valid claim upon which relief may be granted. [28] at 5–14. Because Tindell is entitled to qualified immunity, Williams's Section 1983 due process claims against him are dismissed without prejudice.

It bears repeating: Williams "must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. So Tindell is not liable for the actions of his subordinates. *See id.* Reaching only the first element, the Court finds Williams has not sufficiently rebutted qualified immunity "by establishing that [Tindell's] allegedly wrongful conduct violated clearly established law." *Pierce*, 117 F.3d at 872 (citation modified).

Tindell's particular conduct, as alleged within the [17] Amended Complaint, does not amount to a constitutional violation. *See supra* pp. 16–17; [17]; *Backe*, 691 F.3d at 648.[12]

Williams claims Tindell "deprived [her] of her procedural due process rights . . . by transferring her and then terminating her employment without adequate notice, a fair hearing, or legitimate cause." [17] ¶ 37. She includes the transfer and termination process was "retaliatory and procedurally deficient," and she was denied "a meaningful opportunity to contest her transfer." *Id.* ¶¶ 38, 40.

Many of Williams's allegations are merely conclusory and fail to contain factual specificity regarding Tindell's particular conduct. The allegations that do contain factual specificity are simply not violations of the clearly established constitutional right to due process.  Because "[q]ualified immunity is applicable unless the official's conduct violated a clearly established constitutional right," *Pearson*, 555 U.S. at 232, Tindell is entitled to qualified immunity, and the due process claims are dismissed without prejudice.

D.  Breach of Contract

The Court now turns to Williams's breach-of-contract claim. This claim is dismissed without prejudice.

Williams claims, "[a]s a law enforcement professional, [she] had contractual rights securing her continued employment and termination only upon finding cause

_____

[12] And again, Williams does not provide existing precedent that establishes otherwise. *See Morrow*, 917 F.3d at 875–76 & n.5.

for the same." [17] ¶ 43. According to her, her "employment with MDPS was governed by an implied contract ensuring termination only for cause and after due process." *Id.* She alleges Tindell and MDPS breached the implied contract when they terminated her "without cause and without any substantive evidence of cause for termination." *Id.* ¶ 44. As a result, she seeks reinstatement or damages allowable under state law. *Id.* ¶¶ 44–45.

Defendants argue otherwise. [28] at 23–25. They claim Williams did not have an employment contract with MDPS, so she "cannot establish the first element of a breach of contract cla[i]m . . . ." *Id.* at 23. Even if she did have a contract, Defendants argue "MDPS is immune from any such claim under the [Mississippi Tort Claims Act ("MTCA")]." *Id.* at 24. Defendants also include Williams has "failed to comply with the MTCA pre-suit notice requirements under Miss. Code Ann. § 11-46-11(1) and (3)(b), [so] any implied breach of contract claim should also be dismissed for that reason." *Id.*[13]

### 1. Immunity under the MTCA

First, MDPS is immune from a breach-of-implied-contract claim under the MTCA. S*ee Aries Bldg. Sys., LLC v. Pike County*, No. 5:16-CV-16, 2016 WL 6442486, at *3 (S.D. Miss. Oct. 28, 2016).

The MTCA "grants immunity to the state and its political subdivisions for 'breach of implied term . . . of any . . . contract.'" *City of Jackson v. Est. of Stewart*

---

[13] The Court declines to the reach whether a contract existed between the parties because either way, the outcome remains—the claim is dismissed.

*ex rel. Womack*, 908 So. 2d 703, 711 (Miss. 2005). MDPS qualifies as a political subdivision of the State. *See Corn v. MDPS*, 954 F.3d 268, 273–74 (5th Cir. 2020). Because of this sovereign immunity, *see* Miss. Code. Ann. § 11-46-3(1), this claim is dismissed.

### 2. Notice Requirements under the MTCA

Even if MDPS were not immune, Williams did not follow proper pre-suit procedure under the MTCA.

Williams concedes the alleged "contract" in question was implied. *See* [17] ¶ 43; [31] at 20. And "a claim for breach of an implied contract provision is covered by the MTCA and thus [is] subject to the MTCA's pre-suit notice provision . . . ." *Simpson v. Alcorn State Univ.*, 27 F. Supp. 3d 711, 719–20 (S.D. Miss. 2014) (citing *Est. of Stewart*, 908 So. 2d at 711); Miss Code. Ann. § 11-46-11(1), (3)(b). Defendants contend Williams disregarded this provision. *See* [28] at 23–24. And Williams does not address this contention. *See* [31]. So to the extent that MDPS is not immune, and Williams is asserting breach of an implied term of her employment contract, that claim is barred for failure to provide required pre-suit notice. *See Simpson*, 27 F. Supp. 3d at 720.

### E. Intentional Interference with a Contract

The Court turns finally to Williams's intentional-interference-with-a-contract claim. This claim is also dismissed.

Williams claims her "transfer and termination arose from personal animus and bias on the part of [Tindell] . . . and employees of [MDPS]. The actions of

employees of [MDPS and Tindell] constituted intentional and malicious interference with [Williams's] employment contract with [MDPS]." [17] ¶ 47. She argues she is entitled to damages. *Id.* ¶ 48.

Defendants argue otherwise. They claim Williams did not have an employment contract with MDPS, so she "cannot state a valid tortious breach of contract claim." [28] at 24. Even if she did have a contract, Defendants argue this claim fails "because MDPS is not a stranger to the relationship[,] and Tindell is privileged to interfere absent a showing of bad faith." *Id.* at 24–25 (citation modified). They emphasize Tindell's "position of responsibility on behalf of" MDPS grants him the privilege to interfere, and so Williams "has failed to state a plausible tortious interference with contract claim." *Id.* at 25–26.

For two reasons, the Court need not reach the elements of this claim.

First, "[a] party to a contract cannot be charged with interfering with his own contract." *Snapp v. Ruan Trans. Corp.*, No. 1:05-CV-77, 2006 WL 2455922, at *15 (N.D. Miss. Aug. 22, 2006) (citing *Cenac v. Murry*, 609 So. 2d 1257, 1269 (Miss. 1992)). So to the extent that this claim is alleged against Williams's employer, MDPS, *see* [17] ¶ 47, it is dismissed with prejudice.

Second, "[o]ne occupying a position of responsibility on behalf of another is privileged, within the scope of that responsibility and absent bad faith, to interfere with his principal's contractual relationship with a third person." *Russell v. City of Tupelo*, 544 F. Supp. 3d 741, 763 (N.D. Miss. 2021) (quoting *Grice v. FedEx Ground Package Sys., Inc.*, 925 So. 2d 907, 910 (Miss. Ct. App. 2006)). According to

Williams, "Tindell acted with discriminatory animus [to] remove his conduct from this protection." [31] at 21.

But this allegation lacks support. As discussed above, Williams fails to plausibly allege facts establishing Tindell's discriminatory animus. *See supra* pp. 16–19.; *see also Iqbal*, 556 U.S. at 678 (explaining that at the pleadings stage, the Court is bound to accept factual allegations, not conclusory statements, as true). Nothing in her [17] Amended Complaint suggests that Tindell, in bad faith, maliciously interfered with her alleged employment contract, ultimately causing her transfer and termination. [17]; *see also Sago v. Wal-Mart Stores, Inc.*, 280 F. Supp. 2d 578, 585 (S.D. Miss. Sept. 2, 2003). As a result, the Court finds tortious interference with a contract is unavailable to Williams as a theory of relief against Tindell, and the claim is dismissed without prejudice.

IV.    Conclusion

The Court has considered all arguments. Those not addressed would not have changed the outcome. For the stated reasons, the Court GRANTS Defendants Mississippi Department of Public Safety and Sean Tindell's [27] Motion to Dismiss. In summary:

- The Court dismisses without prejudice Williams's Title VII sex-discrimination claim against MDPS.
- The Court dismisses with prejudice Williams's Title VII harassment/hostile-work-environment claim against MDPS.
- The Court dismisses without prejudice Williams's Title VII retaliation claim against MDPS.
- The Court dismisses without prejudice Williams's Section 1983 equal-protection claim against Tindell.

- The Court dismisses without prejudice Williams's Section 1983 due-process claims against Tindell.
- The Court dismisses without prejudice Williams's breach-of-contract claim.
- The Court dismisses with prejudice Williams's intentional-interference-with-a-contract claim against MDPS; it dismisses without prejudice Williams's intentional-interference-with-a-contract claim against Tindell.

But the Court grants Williams leave to file a Second Amended Complaint, if she so chooses, by July 21, 2025. If Williams does not do so, the Court will enter a separate, final judgment for Defendants, dismissing the case without further notice.

SO ORDERED, this 7th day of July, 2025.

s/ *Kristi H. Johnson*
UNITED STATES DISTRICT JUDGE