## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
## NORTHERN DIVISION

**IVANA WILLIAMS**                                                          **PLAINTIFF**

**V**                                               **CAUSE NO. 3:24-cv-606-KHJ-MTP**

**MISSISSIPPI DEPARTMENT OF PUBLIC SAFETY,**
**SEAN TINDELL, AND JOHN DOES 1-10**                          **DEFENDANTS**

### JURY TRIAL DEMANDED

### SECOND AMENDED COMPLAINT

COMES NOW, Plaintiff Ivana Williams files this Second Amended Complaint to recover back-pay, reinstatement or front pay, compensatory damages, and punitive damages against the Defendants Mississippi Department of Public Safety ("MDPS"), Sean Tindell, and John Does 1-10. This action arises from gender/sex discrimination, harassment, and retaliation, actionable pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq., and violations of the Fourteenth Amendment's Equal Protection and Due Process Clauses, actionable under 42 U.S.C. § 1983.

### PARTIES

1. Plaintiff Ivana Williams is an adult resident of Rankin County, Mississippi. She served as a law enforcement officer for MDPS from March 6, 2018, until her wrongful termination on February 13, 2024.

2. Defendant Mississippi Department of Public Safety is a political subdivision of the State of Mississippi, headquartered in Jackson, Mississippi. MDPS operates the Mississippi Highway Patrol ("MHP"), where Plaintiff was employed. Defendant may be served with process upon:

a) The Attorney General, Lynn Fitch, at Carroll Gartin Justice Building, 450 High Street, Jackson, Mississippi, 39201; and

b) The Commissioner of the Mississippi Department of Public Safety, Sean Tindell, at 1900 East Woodrow Wilson Avenue, Jackson, Mississippi, 39216.

3. Defendant Sean Tindell, in his individual and official capacities, is an adult resident citizen of Mississippi. Defendant Sean Tindell, in his individual and personal capacities, alleging he acted under color of state law to violate Plaintiff's constitutional, statutory and common law rights, is an adult resident citizen of Mississippi. He may be served with process by service of a Summons and Complaint upon him at 222 Port Arbor, Brandon, MS 39047, or at 1900 East Woodrow Wilson Avenue, Jackson, Mississippi, 39216.

4. Defendants John Does 1-10, in their individual and official capacities, are those other persons whose wrongful conduct caused or contributed to the injuries and damages of the Plaintiff, all whose true and correct names are unknown to the Plaintiff at this time, but will be joined by amendment when ascertained.

## JURISDICTION AND VENUE

5. This Court has jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction), 28 U.S.C. § 1343 (civil rights jurisdiction), and 42 U.S.C. § 1983 for claims arising under Title VII of the Civil Rights Act of 1964, as amended, and the Due Process and Equal Protection Clauses of the Fourteenth Amendment.

6. Venue is proper under 28 U.S.C. § 1391(b) because the events giving rise to this action occurred within the Southern District of Mississippi, Northern Division.

## FACTUAL BACKGROUND

7. Plaintiff began the Mississippi Highway Patrol School on October 29, 2017, where she was subjected to pervasive sexual harassment.

8. Background harassment is included as context and exhibits a continuing pattern of sexual harassment and discrimination. Plaintiff endured a pervasive pattern of sexual harassment and discriminatory practices within the Department, which began during her training at the Patrol School and persisted throughout her career.

9. The Defendants, including Tindell, subjected Plaintiff to different terms and conditions of employment and overt sexual harassment based on her female gender which created an objectively hostile work environment. As described below, Defendant Tindell would sit next to the Plaintiff while he was intoxicated, place his hand on her knee and inquire when she would hang out with his roommates.

10. Throughout her employment, Plaintiff consistently performed her duties at a level equal to or exceeding the performance of her male counterparts. Despite her qualifications and dedication, Plaintiff was systematically denied opportunities for advancement and subjected to adverse treatment solely because of her sex. Despite her qualifications and performance, Plaintiff was subjected to systemic discrimination, including but not limited to the following:

   a. Denial of promotions to specialized units, such as the two denials to the Special Operations Group (SOG) and the refusal to allow her onto the motorcycle team, despite her superior qualifications.

   b. Verbal and physical sexual discrimination by male superiors.

   c. Retaliatory transfers following her complaints and reporting.

3

11. As early as Patrol School and through her employment, Plaintiff was subjected to demeaning and degrading treatment not experienced by male trainees, including:

a) Superiors making sexually suggestive remarks.

b) Plaintiff being ordered to lie down and smile in a sexual manner and jump up and down for the amusement of instructors.

c) Instructors patting Plaintiff on the buttocks in public view.

12. During patrol school, Trooper B[1] patted Plaintiff on the side of her buttocks with a yardstick during inspections while she was unable to move.

13. While in a push-up position, Trooper B knelt beside her and demanded she smile at him, refusing to let her go until she complied. He then remarked, "That's what I like to see."

14. Trooper B forced Plaintiff to jump up and down against a wall in the male barracks while male officers watched, commenting that she would "be in shape after patrol school."

15. Trooper B-2 made Plaintiff perform jumps while staring at her breasts. After realizing how inappropriate his behavior was, he abruptly told her to stop.

16. Trooper K made sexual moaning sounds while watching Plaintiff make copies, signaling his approval of her appearance.

17. Upon graduation from Patrol School, harassment and discrimination escalated. The Plaintiff faced constant sexual advances and a hostile work environment perpetuated by superior officers and administrative employees. Male officers were not subjected to comparable treatment.

---

[1] For the purposes of this Complaint and due to the sensitive nature of the subject matter, in most cases initials of supervisors and/or co-workers are inserted rather than the full name, with the full names to be provided in the initial disclosures to be provided.

18. After graduating in March 2018, Plaintiff was treated as "fresh meat" by male officers, including inappropriate advances by Master Sergeant H.

19. Plaintiff's Field Training Officer, engaged in sexually explicit conversations about his past relationships.

20. In Fall 2021, Plaintiff reported to Captain Shows that Lt. C.M. sent Plaintiff unsolicited explicit photos and became possessive when she did not respond. Subsequently Lt. C.M. sent Plaintiff a snap-chat stating, "did you out me." Plaintiff felt uncomfortable and uneasy after reporting the behavior due to the backlash from her male co-workers and supervisors. Further, Plaintiff understands that this Lt. C.M. faced no discipline as a result of his actions. This action on the part of the Defendants is a pattern and practice of sexual discrimination against women and the continuing nature of the discrimination against the Plaintiff.

21. Plaintiff was denied multiple advancement opportunities for the Special Operations Group (SOG) after applying multiple times and at the time there were no females on the SOG; subsequently on or about August 25, 2022, Plaintiff was accepted to SOG only after submitting a verbal grievance to Defendant Tindell. Further, Plaintiff expressed an interest in applying to the motorcycle team in 2019 but was told by Master Sergeant J.B. and Lt. C.O. not to apply because it was a "boy's club." During this time period Master Sergeant J.B. made sexually explicit comments and sent inappropriate images, threatening to use handcuffs on Plaintiff in a sexual manner. Despite her qualifications, Plaintiff was denied admission to the male only motorcycle team, while less-qualified male officers were accepted.

22. In April 2022 at a social event, a male officer demanded, "Let me see your tits," and Captain S.C. propositioned Plaintiff in a hotel room.

23. Defendant Tindell made inappropriate comments about Plaintiff's appearance and referenced a bikini photo of her while he was intoxicated at the Brandon Amphitheater August 21, 2022. During this interaction, Tindell got uncomfortably close to the Plaintiff's ear and placed his hand on her knee causing further discomfort. Also, during this interaction Defendant Tindell inquired about Plaintiff hanging out with one of his roommates at the house located at 222 Port Arbor, Brandon, MS 39047.

24. At the Brandon Amphitheater August 21, 2022, Plaintiff was reminded by Deputy Commissioner K.D. that Plaintiff needed to "be around the right people" to advance her career and that Plaintiff looked like his ex-girlfriend except she had red hair.

25. In 2020, Captain J.P. leveraged the possibility of a position in the training division to pressure Plaintiff for intimate interactions and photos.

26. Upon information and belief, Defendant Tindell is a co-owner and the registered agent for BETC, LLC, which owns a residence located at 222 Port Arbor, Brandon, MS 39047. This home served as a gathering place where Defendant Tindell and his associates frequently hosted guests. The Plaintiff was among those welcomed to this residence on several occasions, invited by Defendant Tindell and his housemates. While enjoying the vibrant atmosphere of the home on multiple visits, the Plaintiff eventually found herself no longer included in these gatherings after declining to go upstairs into the bedroom in or around September 2022. It was suggested to the Plaintiff during these visits that certain connections made at the residence could be beneficial to her professional

advancement. Interestingly, following her absence from these gatherings, the Plaintiff
observed some unforeseen challenges arising in her career path.

27. On February 21, 2023, Plaintiff submitted a grievance to Captain Ricky Dean concerning
how she was being treated differently and that the environment in Troop C had become
hostile towards her. See **Exhibit A**. The Plaintiff was continuously being subjected to
disparate treatment because of her sex and declining the advances of her superiors and
their friends, including Tindell's roommates.

28. After the reassignment or transfer, Plaintiff submitted a grievance to the Defendants.
When Plaintiff challenged the reassignment through grievance, she faced retaliatory
actions. On November 5, 2023, Commissioner Tindell interrogated Plaintiff about an
alleged derogatory statement, seized her work phone, and initiated an internal affairs
investigation.

29. On or about November 15, 2023, during an interview with Internal Affairs, Plaintiff
reported sexual discrimination, disparate treatment based upon her sex a female, and
retaliation for declining the sexual advances of Tindell's housemates; and Plaintiff
informed Internal Affairs that Tindell had full knowledge of the this discrimination and
unlawful treatment. After the Internal Affairs meeting, Plaintiff was transferred to Troop
D in the Delta more than 110 miles away from her home, making her job untenable as a
single mother of four children. Without due process or proper notice, Plaintiff was
reassigned and/or transferred to a district over 100 miles from her home without
legitimate, non-discriminatory justification. Upon information and belief, the transfer of
the Plaintiff was directed by Defendant Tindell. The improper transfer was ordered on
December 29, 2023, allegedly by Col. Ginn; however, Plaintiff understands that Col.

Ginn's last day was December 28, 2023 and the transfer was made upon Defendant Tindell's direction. See **Exhibit B**. Plaintiff submitted a request for the review/basis of the transfer order on December 29, 2023. See **Exhibit C**. The Defendants sent a non-responsive letter to Plaintiff stating "the issue raised is not grievable." See **Exhibit D**.

30. Further, during the November 15, 2023 meeting with Internal Affairs Plaintiff disclosed several matters, including:

    a.  Master Sergeant H sent explicit messages via Snapchat, requesting nude photos and describing sexual acts.

    b.  Master Sergeant J.L. sent sexually explicit photos via text message and requests for motel visits while he associated SOG.

31. Concerning the Male officers under similar circumstances were not subjected to similar reassignment hardships.

    a.  A Master Sergeant C.L. failed to appear for a DUI court as a witness yet received only a five-day suspension without pay and remains employed, and Tindell stepped in and "helped him out." See **Exhibit E**.

    b.  A Lt. C. was discovered having sexual intercourse with an inmate; the incident was covered up, and Trooper C. continues to serve with MHP without discipline.

    c.  A Master Sergeant kept a video of himself engaging in sexual activity on his state-issued phone; although this violation is "well-known within the department," no action was taken against him.

32. Plaintiff's reassignment/transfer created undue burdens as a single mother of four children, a fact known to her superiors who issued the reassignment.

33. After challenging her reassignment through a grievance, she was subjected to a sham due process hearing and terminated on February 13, 2024. Plaintiff was denied procedural protections routinely afforded to male employees, including:

   a) Opportunities to present evidence or respond to accusations.

   b) A fair and transparent hearing process.

   To further complicate the alleged due process hearing and evidencing the pre-textual nature of the hearing, transfer and termination, the General Counsel for MDPS Eric Brown had personal interaction with the Plaintiff from August 2020 through February 2024, through his request to the Plaintiff for photos and his request to come over to her house and lay around with her. Upon information and belief, Eric Brown was involved in the preparation of the disciplinary hearing and termination of the Plaintiff. Such involvement and failure to disclose such activities and interaction between the MDPS General Counsel and the Plaintiff establishes the clear discrimination against the Plaintiff based upon her sex as a female and the Defendants complete disregard for due process, Plaintiff's rights and the Plaintiff as a person.

34. On February 29, 2024, after the Internal Affairs meeting and the filing of her grievance, the Plaintiff was the subject of a retaliatory Search Warrant for some kind of Trade-Mark violation as a penalty for her reporting inappropriate conduct in an effort to get Plaintiff's phones and computers. See **Exhibit F**.

35. Male officers engaged in misconduct, including sexual harassment and criminal activity, yet remained employed. Male officers who engaged in egregious misconduct, including sexual harassment, professional violations, and criminal activity, were treated with

leniency and remained employed, often receiving reassignment or reinstatement instead of termination.

36. Plaintiff was denied procedural protections routinely afforded to male employees, including:

   a) Notice of adverse employment actions.

   b) Opportunities to present evidence or respond to accusations.

   c) A fair and transparent hearing process.

37. Defendant's systemic practices fostered a discriminatory environment where male officers were given preferential treatment, while female officers, including Plaintiff, faced pervasive barriers to advancement, unequal treatment, and retaliation for asserting their rights

38. Defendant failed to implement adequate policies to address and remediate the widespread discrimination and harassment experienced by female employees.

39. Plaintiff timely filed a charge with the EEOC, received a right-to-sue letter, and has satisfied all prerequisites to filing this action

## CAUSES OF ACTION

### Count 1 – Title VII Sex Discrimination (MDPS)

40. Plaintiff Williams is a member of a protected class; she suffered two adverse actions-transfer and termination-within the limitations window.

41. Williams, a female Trooper with an unblemished performance record and no prior discipline, was (a) involuntarily transferred on December 29, 2023, and (b) terminated on February 13, 2024, both within the 180-day limitations period preceding her EEOC charge.

42. Defendant MDPS discriminated against Plaintiff on the basis of sex by subjecting her to pervasive discrimination and harassment, denying her employment advancement opportunities, and retaliating against her for opposing gender discrimination and sexual harassment.

43. As a sample, three similarly situated male Troopers-Master Sergeant C.L. (missed DUI-court appearances), Lieutenant C. (sexual intercourse with an inmate), and an unnamed Master Sergeant who stored a sexual video on his state phone-were neither transferred nor discharged; each received, at most, brief suspensions and remain employed.

44. MDPS failed to provide a workplace free from discrimination and harassment and failed to take remedial action upon learning of the discrimination and harassment, even after filing a grievance by the Plaintiff. The Defendant Mississippi Department of Public Safety discriminated against Plaintiff on the basis of her gender by subjecting her to sexual harassment, and different terms and conditions of employment which created an objectively hostile work environment.

45. Commissioner Tindell personally orchestrated the transfer and termination.

46. Plaintiff's gender was a motivating factor in the Defendant's differential treatment of Plaintiff with respect to her terms and conditions of her employment.

47. Defendants failed to implement or enforce adequate policies to address and remediate workplace discrimination, harassment and retaliation.

48. Plaintiff's complaints of gender discrimination were a but for cause of the retaliation taken against her for reporting and opposing gender discrimination

49. Defendant failed to take remedial action to prevent or address the harassment, despite being aware of its occurrence.

11

50. Plaintiff was subjected to a hostile work environment and sex discrimination where she was sexually harassed and discriminated against by her superiors, and MDPS failed to properly investigate and address her complaints.

51. MDPS retaliated against Plaintiff by transferring her to a distant district, subjecting her to a pretextual internal investigation, targeting her with a search warrant and terminating her employment after she reported discrimination and harassment.

52. The temporal proximity between Williams's sex-bias grievance and her transfer, five weeks between that grievance and her firing, coupled with Tindell's sexual advances and the more lenient treatment of male comparators, supports an inference that sex was a motivating factor.

53. Consequently, the purported policy violations were a pretext for discrimination, and Williams was subjected to adverse employment actions "because of" her sex in violation of Title VII.

## Count 2 – Title VII Retaliation (MDPS)

54. Williams engaged in protected activity on January 6, 2024, as well as when she submitted her previous grievances and reporting to Internal Affairs.

55. On January 6 2024 Williams submitted a written grievance concerning the December 29, 2023, transfer.

56. Five weeks after the grievance, on February 13, 2024, MDPS and Tindell hastily convened disciplinary process to terminate Williams. Upon information and belief, the Geneal Counsel for MDPS Eric Brown was personally involved in the disciplinary process despite his personal interaction with the Plaintiff.

57. The short temporal gap between Williams's protected activity and each adverse employment action supports a causal connection under Title VII.

58. MDPS's proffered justification deviated sharply from the agency's progressive-discipline policy and from the lenient treatment afforded to male comparators identified herein above.

59. Coupled with Tindell's wrongful acts, these facts plausibly show that MDPS's stated reasons were pretextual and that Williams's transfer and termination were motivated by unlawful retaliation.

## COUNT III – Section 1983 Violation (Equal Protection Clause)

60. Defendants Sean Tindell and John Does 1-10, in their individual capacities, acted under color of state law to deprive Plaintiff of her right to equal protection under the Equal Protection Clause of the Fourteenth Amendment by subjecting her to gender-based discrimination, retaliation and harassment.

61. These individual Defendants violated Plaintiff's Fourteenth Amendment right to equal protection by intentionally subjecting Plaintiff to sexual harassment, and different terms and conditions of employment on account of her gender.

62. Tindell's individual actions ordering the involuntary transfer of the Plaintiff on December 29 2023 and the termination on February 13, 2024, were actions motivated in substantial part by Plaintiff's sex, as detailed herein above.

63. Male troopers who engaged in comparable or more serious misconduct were neither transferred nor dismissed, illustrating disparate treatment.

64. Tindell's actions and his direction of the Internal Affairs investigation demonstrate intentional sex-based animus.

65. These individual Defendants are liable to Plaintiff for violating her equal protection right to be free from intentional discrimination motivated by her gender in public employment. The right of a public employee to be free from sex discrimination by state officials is clearly established and that right has been infringed upon by the Defendant Tindell herein.

66. These individual Defendant's actions were intentional, malicious, and in reckless disregard of Plaintiff's constitutional rights. Reasonable officials in Tindell's position would have understood that orchestrating a discriminatory transfer and discharge of a female trooper contravened this clearly established law.

67. Plaintiff was treated differently than her male colleagues in that she was denied opportunities for advancement, subjected to pervasive sexual harassment, and ultimately terminated for pretextual reasons.

68. Defendants engaged in a pattern and practice of discrimination that demonstrated deliberate indifference to Plaintiff's constitutional rights, warranting relief under 42 U.S.C. § 1983. Accordingly, Tindell is not entitled to qualified immunity, and Williams is entitled to relief under 42 U.S.C. § 1983 for violation of her Fourteenth Amendment right to equal protection.

69. As a direct result of these constitutional violations, Plaintiff suffered damage, including lost income, emotional distress, and harm to her career

## COUNT IV – Section 1983 Violation (Procedural and Substantive Due Process)

70. Defendant Tindell, acting under color of state law, deprived Plaintiff of her property interest in her employment without due process by transferring and terminating her

without proper notice or a fair hearing. Miss. Code § 45-3-9 and the MHP Policy Manual create a property interest in employment terminable after due process.

71. Plaintiff was not given meaningful notice of the allegations against her, nor was she provided with a fair opportunity to respond before being transferred and then terminated. Williams was denied the right to be represented by counsel, her attorney was present but prohibited from speaking and was not allowed to call witnesses or cross-examine agency witnesses.

72. Plaintiff had a protected property interest in her job as a public employee, which was unlawfully deprived through a retaliatory and procedurally deficient transfer and termination process. At no point did Williams receive a neutral decision-maker, meaningful notice of the evidence against her, or an opportunity to present a defense.

73. Individuals responsible for Plaintiff's transfer and termination, namely Sean Tindell, retaliated against Plaintiff for asserting her rights under Title VII and challenging her discriminatory reassignment and treatment. Male troopers facing similar or more serious allegations routinely receive full Employee Appeals Board review and are often reinstated, further evidencing the arbitrary nature of the process.

74. The transfer process lacked due process, transparency and impartiality, as it was tainted by bias and influenced by individuals who participated in the harassment and retaliation against Plaintiff, denying her a meaningful opportunity to contest her transfer.

75. The hearing process lacked transparency and impartiality, as it was influenced by individuals who participated in the harassment and retaliation against Plaintiff, denying her a meaningful opportunity to contest her termination.

76. Defendants acted arbitrarily and capriciously, and their conduct violated Plaintiff's substantive due process rights by taking adverse employment actions against her for unlawful and retaliatory reasons. Tindell's conduct thus violated Williams's procedural and substantive due-process rights under the Fourteenth Amendment.

77. As a result of these constitutional violations, Plaintiff suffered significant damage, including lost income, emotional distress, and harm to her career.

### COUNT V – Tortious Breach of Contract

78. The Defendants Mississippi Department of Public Safety, Sean Tindell, and John Does 1-10 breached Plaintiff's employment contract by terminating her employment without cause and without any substantive evidence of cause for termination. The professional and reputational harm to Plaintiff caused by the breach of contract can be remedied only by her reinstatement to her position or payment of front pay and other damages allowed under state law.

79. MDPS and Tindell failed to follow their own policies and procedures governing termination, further evidencing a breach of Plaintiff's contractual rights. Acting outside the scope of legitimate managerial discretion and motivated by sex-based animus and retaliation, Tindell orchestrated Williams's involuntary transfer and dismissal in breach of that covenant. Tindell's actions deprived Williams of salary, seniority, retirement credits, and professional reputation, causing economic loss and emotional distress.

80. Plaintiff is entitled to all categories of contractual monetary lost wages, benefits, and other economic losses arising from the alleged breach, and all damages available under the law from Defendants Mississippi Department of Public Safety, Sean Tindell, and John Does 1-10.

## COUNT VI – Intentional Interference with Contract

81.  Plaintiff had a contractual expectation of continued employment and termination only for cause. Defendant Tindell breached this implied contract by terminating her employment without legitimate cause. As a law enforcement professional, Plaintiff had contractual rights securing her continued employment and termination only upon finding cause for the same. Plaintiff's employment with MDPS was governed by an implied contract ensuring termination only for cause and after due process.

82. At all relevant times Tindell, acting in his personal capacity and with malice, was a third party to Williams's employment contract for purposes of Mississippi tort law.

83. Tindell intentionally procured the adverse actions against Williams by (a) instigating a biased Internal Affairs investigation, (b) ordering her December 29, 2023, transfer over 100 miles from her home, and (c) instigating the sham disciplinary hearing that led to her termination.

84. Tindell's motives included retaliating for Williams's January 6, 2024, grievance and perpetuating a "boys-club" culture that excluded women from elite units. Similarly situated male troopers who committed equal or greater misconduct, including those identified in herein above, remained employed, evidencing that the stated justification was simply a pretext for sexual discrimination.

85. Defendants, including Sean Tindell and John Does 1-10, intentionally interfered with Plaintiff's employment contract by engaging in retaliatory conduct that resulted in her wrongful termination. As a law enforcement professional, Plaintiff had contractual rights securing her continued employment by the Mississippi Department of Public Safety and termination only upon a finding of cause for the same.

86. Plaintiff's transfer and termination arose from personal animus and bias on the part of Sean Tindell, John Does 1-10, and employees of the Mississippi Department of Public Safety. The actions of employees of the Mississippi Department of Public Safety, Sean Tindell and John Does 1-10 constituted intentional and malicious interference with Plaintiff's employment contract with the Mississippi Department of Public Safety.

87. Defendants' actions were taken with malice and with the intent to deprive Plaintiff of her career and livelihood, causing her significant financial and emotional distress. Tindell's interference proximately caused Williams to lose wages, retirement benefits, promotional opportunities, and to suffer severe emotional distress.

88. As a result of this interference, Plaintiff suffered damages including, but not limited to, lost wages, benefits, and career opportunities. Plaintiff is therefore entitled to compensatory and punitive damages against the Mississippi Department of Public Safety, Sean Tindell and John Does 1-10.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

89. Actual damages in an amount to be determined by a jury.

90. Lost wages and benefits.

91. Award Back Pay.

92. Reinstatement or front pay.

93. Compensatory damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non- pecuniary losses;

94. Reasonable attorneys' fees, costs, and expenses; and Reasonable attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988.

95. Punitive damages against individual Defendants and against all Defendants for state law claims..

96. For Section 1983 Claims Plaintiff seeks punitive damages against the individual Defendants Sean Tindell and John Does 1-10 to deter future violations of constitutional rights.

97. Contractual monetary damages

98. Such other relief as the Court deems just and proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Dated this the 21 day of July, 2025.

Respectfully submitted,

IVANA WILLIAMS

By: /s/Robert Ogletree

ROBERT B. OGLETREE(MSB#10427)
ROBERT B. OGLETREE PLLC
1640 Lelia Drive, Suite 105
Jackson, MS 39216
Telephone: (601) 345-2900
Email: rbogletree@gmail.com